**In the United States Bankruptcy Court**
**For the Eastern District of Pennsylvania**

| | |
|---|---|
| In re | : Chapter 13 |
| | : |
| Leon Garberg and Barbara Garberg | : |
| Debtor(s) | : Bankruptcy No. 05-19589 SR |

# <u>Opinion</u>

By: Stephen Raslavich, United States Bankruptcy Judge.

**<u>Introduction</u>.**

Before the Court are the debtors' objections to three claims filed by American Express Travel Related Services Co., Inc. ("AMEX"). AMEX filed a response to the objections and a hearing was held on April 28, 2006. At the hearing, counsel for the parties advised the Court of their agreement to have a certain affidavit and related documentation which had been submitted with AMEX's response comprise the evidentiary record, together with a separate Stipulation of Facts the parties intended to file thereafter. The Stipulation of Facts was filed on May 10, 2006. By consent, the parties agreed to the filing of supplemental supportive briefs. The Debtors filed a brief on May 15, 2006. Conversely, on May 12, 2006, AMEX filed a "Statement in Lieu of Brief," which recited that in support of its position AMEX would rest on its response, the accompanying exhibits thereto, and the parties' Stipulation of Facts. This contested matter is thus ripe for disposition. For the reasons set forth herein, the objections

will be dismissed and the claims allowed.[1]

**Background**.

The claims at issue relate to credit card charges. The claims are numbers 18 ($679.31); 19 ($682.20) and 20 ($19,897.44). The essence of the dispute goes to the Debtors' contention that the charges in question, admittedly made by Mr. Garberg using a card bearing his name, are the liability of Mrs. Garberg only, because she applied for the card, and because she alone signed the account application. AMEX holds the contrary view that, notwithstanding the foregoing facts, the couple's liability for Mr. Garberg's charges is joint and several. The parties' brief Stipulation of Facts elaborates on the controversy as set forth below.

> 1. Debtors filed a Chapter 13 bankruptcy on July 13, 2005.
>
> 2. Debtors' took the State exemptions and exempted all joint assets held by Husband and Wife as tenants by the entireties as exempt from non-joint creditors;
>
> 3. Debtors' Chapter 13 Plan proposes to pay all joint unsecured creditors at 100% and all non-joint unsecured creditors pro-rata from remaining funds if any.
>
> 4. Debtors have listed the Claims of American Express Travel Related Service Co., Inc.(Hereinafter Claimant) claim numbers 18, 19, and 20 as claims against Wife

---

[1] The Objection characterizes the claims as "secured," but this is a mistake, as the claims assert general unsecured status.

only.[2]

5.  Claimant asserts that the majority of its claims are the legal responsibility of both debtors and it is stipulated as follows:

> A.  Barbara Garberg applied to American Express for the American Express Cards which consists of the claims made in claim numbers 18, 19, and 20.  Barbara Garberg applied for each as the Basic Cardmember.  Cards were issued on each account, per her request, to Leon Garberg as Additional Cardmember.  Debtor husband was authorized to use the credit cards per the request of debtor wife.
>
> B.  At the time the American Express cards were issued the envelope contained a separate document that claimant called an "account agreement" and it stated as follows:
>
>> "Welcome to American Express Cardmembership:
>>
>> When you keep, sign or use the Card issued to you (includingany renewal or replacement cards), or you use the accountassociated with this Agreement (your "Account"), you agreeto the term of this Agreement.
>>
>> Promise to Pay:
>>
>> You promise to pay all Charges, including Charges incurred by Additional Cardmembers, on your Account.  This promise includes any Charge for which you or an Additional Cardmember indicated an intent to incur the Charge, even if you or the Additional Cardmember have not signed a charge form or

---

[2] As discussed, *infra*, this is not, in fact, the case, as substantial credit card debt to AMEX on the part of Mr. Garberg is reflected on the couple's amended bankruptcy schedules.

3

> presented the Card. You also promise to pay any Charge incurred by anyone that you or an Additional Cardmember let use the Card, even though You have agreed not to let anyone else use the Card.
>
> Status of and Responsibility for Additional Cardmembers:
>
> An Additional Cardmember is not liable for Charges incurred by the Basic Cardmember or by other Additional Cardmembers. However, by each use of the Additional Card to incur Charges, the Additional Cardmember indicates his or her agreement to pay us for the Charge if you fail to or refuse to pay it, and we may, at our discretion, pursue Additional Cardmembers for payment of Charges they incur or authorize."

6. Claim number 18, 19 and 20 consist of three (3) credit cards issued to debtor BarbaraGarberg as the "Basic Cardmember" and cards issued per debtor Barbara Garberg's request to debtor Leon Garberg as an "additional card member".

7. Debtor husband did use the credit cards.

8. The charges attributable to debtor husband's authorized user card are $19,564.56(claim #20), $657.49 (claim #19), and $679.31 (claim #18)

The issue before the Court accordingly is straightforward. Is Mr. Garberg liable for his charges, along with Mrs. Garber, or is he not? Having evaluated the evidence against applicable law, the Court concludes that AMEX has the better part of the argument.

**Discussion.**

At the outset, the Court notes that the burden of proof shifts throughout the course of a claims objection. Initially, the claimant must allege sufficient facts to support its claim and once done, the claim becomes prima facie valid. *See* 11 U.S.C. § 502(a); B.R. 3001(f). Thereafter, the burden of going forward shifts to the party objecting to the claim—here, the Debtors— to produce evidence to negate the prima facie validity of the claim. If the Debtors produce sufficient evidence to negate one or more of the sworn facts in the claim, the ultimate burden of persuasion reverts to the claimant, AMEX, to prove the validity of its claim by a preponderance of the evidence. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir.1992); *In re Chiro Plus, Inc*. 339 B.R. 111, 113 (D.N.J.2006); *In re United Companies Fin. Corp.*, 267 B.R 524, 527 (Bankr.D.Del.2000).

In this instance, the claims in question clearly warrant an initial finding of *prima facie* validity. The Bankruptcy Code broadly defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured …" 11 U.S.C. § 101(5)(A). All three of the present claims state as their basis "credit card debt." *See* Claim ## 18-20. And all three assert that both husband and wife are liable. Attached to each claim is an

5

itemization of which charges were made by which spouse.[3] *See generally* Claim ## 18-20. For purposes of establishing that its claims are self-sustaining, the Court accordingly finds all three to be sufficient. The burden of proof as to disallowance thus shifted to the Debtors.

At this juncture, however, the Court finds the Debtors' threshold argument as to Mr. Garberg's having never signed an account application sufficient to "burst the bubble" of the *prima facie* validity of the AMEX claims and return the burden of proof to AMEX. In the end, though, the Court finds that AMEX has clearly carried its burden of persuasion and its claims will therefore be allowed.

There is surprisingly sparse case law covering this seemingly commonplace fact pattern.

The Debtors' argument is a fairly straightforward one. They contend that there was never any contractual relationship between Mr. Garberg and AMEX; hence there can be no debtor/creditor relationship between the two. The only contractual relationship here, say the Debtors, was between Mrs. Garberg and AMEX. Accordingly, they insist, she and she alone is liable for the charges in question. On this score, the Court takes note of the

---

[3] Copies of neither the statements of account nor the credit card contract are attached as both are described as too lengthy. The attachment goes on to say that such documentation is available upon request. That is permitted by the Official Form. The agreements and statements, in any event, are attachments to the AMEX response.

6

authorities proffered by the Debtors, which speak to well established principals of Pennsylvania common law with respect to the elements of an enforceable contract, including, in particular, those which emphasize the need for the parties to have a "meeting of the minds" and "manifest their intention to be bound," to "a contract whose terms are sufficiently definite to be enforced."  (Citations omitted.) Although none of the decisions cited by the Debtors arose in a factual context similar to the instant one, the legal propositions the debtors urge are undoubtedly sound.  Unfortunately, however, the few cases which have involved somewhat similar fact patterns, together with the evidentiary record in this particular proceeding, militate against the Debtors' cause.

AMEX argues that mutuality and assent to a contract can be found even absent a signature.  The Court agrees.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. vs. Kilgore,* 751 So.2d 8, 11 (Ala. 1999) (citations omitted) ("the object of a signature on a contarct is to show mutuality and assent, and that mutuality and assent can be manifested in ways other than a signature. . . . Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance).

AMEX argues that, since the Agreement at issue herein explicitly provides that Mr. Garberg is liable for any charges he

incurred should Mrs. Garberg refuse to pay, by using the card he assented to the terms of the Agreement.  *See also Perry v. FleetBoston Financial Corp.*, 2004 U.S. Dist. LEXIS 12616, at *16 (E.D. Pa. July 6, 2004) (use of credit card manifested assent to the contract terms).

    AMEX relies also on *Baker v. American Express Travel Related Services Co. Inc.*, 2002 WL 1205065 (W.D. Ky. May 28, 2002) for the proposition that Mr. Garberg is charged with knowledge and acceptance of the terms that he could have read in the exercise of ordinary care and therefore, whether he read the Agreement or not, Mr. Garberg is liable along with Mrs. Garberg for the charges.  In *Baker*, the plaintiff employee was issued an American Express corporate credit card by his former employer.  *Id.* at *1.  He was told, or given the impression, that he would not be personally liable for repayment of any charges placed on the card so long as the charges were incurred for business purposes only.  *Id.*  He did not recall whether he received a copy of the Cardmember Agreement but it was undisputed that the reverse side of his credit card read "Use of the Corporate Card constitutes acceptance of the terms and conditions of the Cardmember Agreement accompanying this Card when issued . . . ."  *Id.*  The reverse side of the card also directed him to a toll-free telephone number if he had any questions regarding use of the card or wanted to obtain a copy of the Cardmember Agreement.  *Id.*

Needless to say, the Cardholder Agreement stated that AMEX reserved the right to collect the amount of any charges directly form the corporate cardmember. *Id.*

The plaintiff in *Baker* used the card to pay for business travel expenses for several years without incident and had no contact with AMEX during this period. *Id.* at *2. AMEX at some point obtained a copy of the plaintiff's credit report from Trans Union. Subsequently, the plaintiff left his employment and returned his corporate card to his former employer. *Id.* A while thereafter, the plaintiff filed suit claiming, *inter alia,* that the defendants violated the Fair Credit Reporting Act and invaded his privacy rights by obtaining a copy of his credit report. *Id.* In its defense, AMEX argued that it permissibly obtained a copy of the plaintiff's credit report because it extended credit to him by virtue of the corporate credit card. *Id.*

The *Baker* court agreed with AMEX. The court held that, even assuming that the plaintiff did not receive a copy of the cardmember agreement, he nevertheless had an opportunity to ascertain its terms by contacting the toll-free telephone number on the back of his card. *Id.* The court found that the back of the card stated unambiguously that use of the card constituted acceptance of the terms of the cardmember agreement. *Id.* It also provided a telephone number that he could have called in order to obtain a copy of the agreement. *Id.* Stating that if he

9

had called that number, he could have learned that the agreement subjected him to personal liability for any charges placed on the card,[4] the court found that he is "charged with knowledge and acceptance of the terms that he could have read in the exercise of ordinary care, including whether he assumed personal liability for use of the card." *Id.* (citations omitted).

Another decision which provides helpful guidance is *American Express Travel Related Services Co., Inc. v. Seidenfeld*, 2003 WL 23148835 (N.Y. Sup. Dec. 8, 2003); 781 N.Y.S.2d 622 (N.Y. Sup. 2003). In that case, a Ms. Rochelle Seidenfeld entered into an agreement with AMEX to obtain a credit card. *Id.* at *1. Rochelle also requested and was issued an additional card to one Shaya Seidenfeld (presumably her husband or other family member, although the relationship is not disclosed in the opinion). *Id.* AMEX contended that both Rochelle and Shaya agreed to the terms and conditions set forth in the cardmember agreement and that the written agreement was sent to each defendant at the time they were given their respective credit cards. *Id.* AMEX further argued that by using the card, they accepted the terms of the agreement. Relying on the express terms of the agreement, AMEX contended that Rochelle was liable for her own purchases and

---

[4] In a footnote, the court also stated that the fact that the plaintiff's liability to the defendant was only secondary or contingent is immaterial; the cardmember agreement shows that the defendant was nevertheless extending credit to the plaintiff. *Id.* at *2, n.3.

10

those made by Shaya and that in addition, AMEX could also pursue Shaya for all charges made by him. *Id.* Thus, AMEX sued both cardholders for breach of contract and unjust enrichment and moved for summary judgment on all counts.

Defendant Rochelle did not oppose the plaintiff's motion for summary judgment on the breach of contract claim but contended that the amount due was in dispute. Shaya, on the other hand, disputed AMEX'S claim that he was given a copy of the card member's agreement with the credit card, and claims that there is no contract between himself and AMEX, and therefore he has no liability to plaintiff for any charges he made. *Id.* at *2.

The court held that the primary cardholder, Rochelle Seidenfeld, clearly was liable on the account. As for Shaya Seidenfeld, the court denied cross motions for summary judgment on the breach of contract and unjust enrichment claims against Shaya, stating that "[t]he issue of fact to be resolved is whether Shaya Seidenfeld received an agreement explaining his obligations under the account and whether use of the additional card made him personally liable for his own charges." *Id.* at *3.

The Court notes that copies of the AMEX credit cards at issue herein have not been made a part of the present record. It is not possible, therefore, for the Court to determine, what, if anything, the cards reflected concerning the implications of using the card, or whether it reflected a telephone number that

11

the cardholder might have called to ascertain the consequences of using the card. There is, however, other evidence in the record form which the court may reasonably infer that Mr. Garberg knew that his usage of the card created joint liability on his part.

First, the Court notes that a part of the record before it consists of the affidavit of Paul V. Carey, an American Express employee. This affidavit, at paragraph 2 thereof, recites, as follows:

> 2. At the time the American Express cards were issued, **the Debtors** were also issued account agreements. These account agreements, admissible under Fed. R.Evid. 902(11) (as certified *infra* per 28 U.S.C. § 1746(2)), alternatively under Fed. R. Evid. 803(6), as certified domestic records of regularly conducted activity, were entered into at the time of agreement with the cardmembers upon the extension of credit facilities to them, have been kept in the course of American Express' regularly conducted lending activities, and were made in the course of American Express' regularly conducted lending activities as a regular practice. The account agreements outline the terms of the Debtors' liabilities on the Accounts. (Emphasis added by the Court)

Mr. Carey's affidavit is uncontroverted and nothing in the parties' stipulation of facts refutes his sworn assertion that "the Debtors" (plural) were issued account agreements. From this, the Court concludes that both Mrs. Garberg and Mr. Garberg were provided with a copy of the account agreement, and that Mr. Garberg therefore had reason to know that his usage of the AMEX

cards would occasion personal liability.

    The Court also notes the contents of the Debtors' bankruptcy schedules.  In the original schedules filed by the Debtors when they commenced their case, on Schedule F, (Creditors Holding Unsecured Non-Priority Claims) the Debtors listed approximately $99,000.00 in credit card debt.  Of this, a single claim for "American Express" was scheduled in the amount of $20,053.00, which claim was listed as the debt of Mrs. Garberg.  Approximately 5½ months later, on January 3, 2006, the Debtors filed an amended Schedule F.  On this Schedule, the couple's credit card debt had risen to approximately $160,000.00.  27 separate credit card debts are scheduled, and in each instance the Debtors carefully delineated whether the liability was that of husband or wife.  A total of six separate claims for American Express are listed.  None of these claims is listed as contingent, unliquidated, or disputed, and two of the claims – one in the amount of $682.00 and the other in the amount of $19,897.00 – are listed as the debts of <u>Mr. Garberg</u>.

    The amendment thus establishes the very point that the objection contests: i.e., Mr. Garberg's liability.  That is to say that information contained in one's bankruptcy schedules may be considered as an admission.  The Court, accordingly, accords the  Garberg's amendment to Schedule F probative weight.  *See*

13

F.R.E. 801(d)(2)[5]; *see also* Russell, *Bankruptcy Evidence Manual,* 2005, Ed. § 801.13; *In re Campbell*, 336 B.R. 430, 436 (9th Cir.BAP 2005); *Larson v. Groos Bank*, 204 B.R. 500, 502 (W.D.Tex.1992) (statements in schedules constitute admissions); *In re Musgrove*, 187 B.R. 808, 816 (Bankr.N.D.Ga.1995) (same); 4 *Collier on Bankruptcy* ¶ 521.08[2] (schedules may be considered as judicial admissions); *In re Arcella-Coffman*, 318 B.R. 463, 475, 476 (Bankr.N.D.Ind.2004) (recognizing that information in schedules may constitute an admission explaining that "[t]he debtor is of course in the best position to initially evaluate and state the nature, amount and categorization of his/her debts and property.") The Debtors' own Amended Schedule F, accordingly, corroborates AMEX's claim that its claims are jointly held against Mrs. and Mr. Garberg.[6]

In sum, the Court finds that even if Mr. Garberg's use of the cards alone were insufficient to infer his assent to contractual liability for his charges, which is a proposition that courts have rejected. Mr. Garberg's mutual liability may reasonably be inferred from his usage of the cards, together with the contents of the Carey affidavit and the couple's own

---

[5] Made applicable to bankruptcy cases by B.R. 9017.

[6] As to the AMEX claims, there can be no dispute that if Mr. Garberg is liable, Mrs. Garberg is also liable; for the Debtors acknowledge that Mrs. Garberg applied for all of the cards and accepted the terms of the account agreements.

bankruptcy schedules.  The Garbergs' objections will accordingly be dismissed and the AMEX claims will be allowed as filed.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:    June 7, 2006

**In the United States Bankruptcy Court**
**For the Eastern District of Pennsylvania**

| | |
|---|---|
| In re | : Chapter 13 |
| | : |
| Leon Garberg and Barbara Garberg | : |
| Debtor(s) | : Bankruptcy No. 05-19589 SR |

## Order

**And now**, upon consideration of the debtors' Objection to Allowance of Claims of American Express Travel Related Services Co., Inc. ("AMEX"), all responses thereto, and the stipulated evidentiary record, it is hereby:

**Ordered,** that the Debtors' Objection to Allowance of Claims of AMEX are dismissed. The Claims are allowed in the amount filed.

By the Court:

Dated: June 7, 2006

Stephen Raslavich
United States Bankruptcy Judge

Michael P. Kelly, Esquire
Cowan & Kelly
202 Penns Square
Langhorne, PA 19047

NATALIE M. MCGHEE, Esquire
Becket & Lee LLP
16 General Warren Blvd
PO Box 3001
Malvern, PA 19355

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Frederick L. Reigle, Esquire
Chapter 13 Trustee
2901 St. Lawrence Avenue
P.O. Box 4010
Reading PA 19606